John R. Habashy (SBN 236708)
*john@lexiconlaw.com*
**LEXICON LAW, PC**
633 West 5th Street, 28th Floor
Los Angeles, CA 90071
Tel: (213) 223-5900
Fax: (888) 373-2107

**[Additional Counsel listed below]**

Attorneys for Plaintiff Anthony Kamel
and the Putative Class

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANTHONY KAMEL, individually and on behalf of a class of other similarly situated individuals, <br><br> Plaintiff, <br><br> v. <br><br> ALBERTSONS COMPANIES, INC., a Delaware corporation, <br><br> Defendant. | **Case No.: 8:24-cv-00270** <br><br> **COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT** <br><br> **CLASS ACTION** <br><br> **DEMAND FOR JURY TRIAL** |

**Additional Counsel for Plaintiffs and the Putative Class:**

Scott D. Owens (FL 0597651)
*(Pro Hac Vice to Be Submitted)*
scott@scottdowens.com
**SCOTT D. OWENS, P.A.**
3800 South Ocean Drive, Suite 235
Hollywood, Florida 33019
Tel: (954) 589-0588
Fax: (954) 337-0666

## INTRODUCTION

1.     "Being deluged with 'spam' telemarketing phone calls or text messages is the bane of modern life. In a world where countless companies try to capture our attention it can be exasperating to receive yet another ping on a smartphone." *Borden v. EFinancial, LLC*, 53 F.4th 1230, 1231 (9th Cir. 2022).

2.     "Consumer complaints about abuses of telephone technology – for example, computerized calls to private homes – prompted Congress to pass the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227. Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls." *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740 (January 18, 2012) (internal citations omitted).

3.     By means contrary to the TCPA, defendant, Albertsons Companies, Inc. ("Defendant") has contacted plaintiff, Anthony Kamel's ("Plaintiff") cell phone number multiple times (using a device known as an autodialer) in order to sell him its goods or services, even after Plaintiff told Defendant to stop contacting him.

4. Indeed, Defendant, during the time frame relevant to this complaint, has sent out thousands of unlawful and unwanted text messages in violation of the TCPA. By effectuating these unauthorized text message calls, Defendant has caused consumers actual harm, not only because consumers were subjected to the aggravation that necessarily accompanies mobile spam, but also because consumers frequently have to pay their cell phone service providers for the receipt of such spam and such messages diminish cellular battery life, waste data storage capacity, and are an intrusion upon seclusion.

5. Given the automated, incessant, and unwanted nature of these calls, and the cost of litigation as compared with individual recoveries, a class action is the only practicable means of obtaining redress for Defendant's illegal telemarketing, and is consistent with both the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

6. Accordingly, in an effort to enforce this fundamental federal right to privacy, Plaintiff files the instant class action complaint alleging violations of 47 U.S.C § 227 *et seq*., the Telephone Consumer Protection Act ("TCPA").

**OVERVIEW OF THE TCPA**

7. Advancements in telephone dialing technology by the 1980s and 90s made reaching a large number of consumers by telephone easier and more cost-effective. However, this technology has also brought with it an onslaught of unsolicited robocalls, spam text messages, and junk faxes that intrude on individual privacy and waste

consumer time and money. As a result, the federal government and numerous states have enacted legislation to combat these widespread telecommunication issues. As Congress recognized: Many customers are outraged over the proliferation of intrusive, nuisance calls to their homes…. Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion. Pub. L. No. 102.243, 105 Stat. 2394 § 2(6, 12) (1991).

8.     "The TCPA makes it 'unlawful for any person within the United States ... (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system ... (iii) to any telephone number assigned to a ... cellular telephone service" without the recipient's prior express consent. *An Phan v. Agoda Co. Pte. Ltd.*, 351 F. Supp. 3d 1257, 1261 (N.D. Cal. 2018), *aff'd sub nom. Phan v. Agoda Co. Pte. Ltd.*, 798 F. App'x 157 (9th Cir. 2020) (quoting 47 U.S.C. § 227(b)(1)(A)(iii)).

9.     "The type of consent required depends on the content of the message." *Id.* If the text message constitutes telemarketing, the sender is required to obtain "prior express written consent." *Id.* (citing 47 C.F.R. at §§ 64.1200(a)(1) and (2)). If the message is telemarketing, "the sender must have secured, prior to sending the message,

the signature of the recipient in a written agreement that includes several specified disclosures." *Id.* (citing 47 C.F.R. § 64.1200(f)(8)).

10.     "To constitute telemarketing, the text message must be 'for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services.'" *Id.* (quoting 47 C.F.R.§ 64.1200(f)(12)).

11.     Further, the TCPA prohibits "initiat[ing] any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]" 47 C.F.R. § 64.1200(d). The procedures instituted must meet certain minimum standards, including, but not limited to: (1) having a written policy, available on demand, for maintaining a do-no-call list; (2) informing and training personnel engaged in any aspect of telemarketing on the existence and use of the do-not-call list; (3) recording and honoring do-not-call requests; (4) identifying the caller and person or entity on whose behalf the telemarketing call is being made; (5) applying the do-not-call request to the particular business entity making the call or on whose behalf the call is made; (6) maintaining a record of requests not to receive further telemarketing calls and honoring such for at least five years from the time the request is made. *Id*.

12.     This provision is applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers. 47 C.F.R. 64.1200(e).

13.     The term "telephone solicitation" means "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization." 47 U.S.C. § 227(a)(4)

14.     The FCC has recognized that the TCPA and implementing regulations apply to "both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls[.]" *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014, 14115 (2003).

15.     In general, courts have also found that text messages fall under § 64.1200(d). *Hand v. Beach Entm't KC, LLC*, 456 F. Supp. 3d 1099, 1124 (W.D. Mo. 2020) (denying motion for summary judgment which argued that "§ 64.1200(d) does not apply to receipt of text messages on a cell phone but rather solely applies to calls made to a 'residential telephone subscriber'); *Doohan v. CTB Inv'rs, LLC*, 427 F. Supp. 3d 1034, 1069 (W.D. Mo. 2019)

16.     The FCC—which develops the rules and regulations implementing the TCPA—has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violation." *In re Rules and Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, at ¶13 (1995).

17.     The FCC has "repeatedly acknowledged the existence of vicarious liability under the TCPA." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014) (citing *In re Joint Petition Filed by DISH Network, LLC et al*, for Declaratory Ruling Concerning the TCPA Rules, 28 FCC Rcd. 6574 (2013) ("*FCC 2013 Ruling*")). In addition to formal agency, principles of apparent authority and ratification may also provide a basis for vicarious seller liability for TCPA violations. *FCC 2013 Ruling*, 28 FCC Rcd. at 6548 ¶28.

18.     Text messages are "calls" within the context of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009).

19.     The FCC has specifically ruled that a consumer's prior express consent to receive future text messages may be revoked. In *the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act* of 1991, 27 F.C.C. Rcd. 15391, 15391 (2012) ("*In re SoundBite Communications, Inc.*").

20.     The Telemarketing Sales Rule, 16 C.F.R. 310 *et seq*. prohibits telemarketers from engaging in, or sellers from causing telemarketers to engage in, conduct that is abusive. 16 C.F.R. § 310.4(b). Abusive conduct includes initiating any outbound telephone call to a person when "[t]hat person previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered." *Id.* at § 310.4(b)(1)(iii)(A).

## JURISDICTION

21.     This Court has federal question subject matter jurisdiction over this action

pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, et seq.

22.     This Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant directs, markets, and provides its business activities to this District, and because Defendant's unauthorized marketing scheme was directed by Defendant to consumers in this District, including Plaintiff.

## PARTIES

23.     Plaintiff is a natural person who, at all times relevant to this action, was a resident of the State of California.

24.     Defendant is a Delaware corporation whose principal address is 250 E. Parkcenter Blvd., Boise, ID 83706 and whose registered agent for service of process in the State of California is CT Corporation System, 330 N Brand Blvd Ste 700, Glendale, CA 91203.

25.     Defendant is one of the largest food and drug retailers in the United States, with over 2,200 stores in 34 states (including California) and the District of Columbia.[1]

26.     Unless otherwise indicated, the use of the Albertsons name in this Complaint refers to Defendant and includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Albertsons.

---

[1] https://www.albertsonscompanies.com/about-aci/overview/default.aspx

## FACTUAL ALLEGATIONS RELATED TO THE
## INTERNAL DO NOT CALL CLASS

27. Plaintiff is the account holder of the cellular telephone number ending in 0635 (the "0635 Number").

28. Plaintiff is the regular user of the 0635 Number and uses the 0635 Number as his residential telephone line.

29. During the time frame relevant to this complaint, Defendant has caused multiple text messages to be transmitted to the 0635 Number.

30. Defendant obtained Plaintiff's phone number when he was shopping at one of Defendant's stores by asking Plaintiff for his phone number while he was paying for the items he was purchasing. He was instructed by Defendant's employee (the cashier) to provide his phone number (the 0635 Number) in order to determine whether he was a "rewards member." Upon providing his number as requested by Defendant, Plaintiff did not sign any documents or contracts, nor review any "prompt screens" or other disclosures on Defendant's point-of-sale system. Similarly, Plaintiff was not asked to verbally confirm agreement to any terms or conditions, or to otherwise consent to be contacted on his cellular phone, nor did Plaintiff verbally or otherwise offer any such confirmation or consent.

31. Defendant did not have Plaintiff's prior express consent to contact him on his cellular phone.

32. Defendant did not have Plaintiff's prior written consent to contact him.

33.     On more than one occasion, the first of which was on or around December 5, 2023, Plaintiff asked Defendant to stop texting him but Defendant has continued to send him text messages, the latest of which (as of this writing) was on January 16, 2024. *See **Exhibit 1.***

34.     Defendant sent multiple telemarketing text messages to Plaintiff subsequent to Plaintiff instructing Defendant to cease contacting him further. These post opt-out telemarketing text messages were sent despite Plaintiff opting out in precisely the way outlined in Defendant's telemarketing text messages—by replying back with the word "Stop."

 More specifically, after confirming receipt of Plaintiff's opt-out request on December 5, 2023 (the same day plaintiff sent the opt-out text), Defendant sent an additional telemarketing text message to Plaintiff that same day. Plaintiff <u>again</u> opted out by replying "Stop", which Defendant again confirmed receipt of that same day. The following day on December 6, 2023, and despite having twice confirmed receipt of Plaintiff's two separate opt-out texts, Defendant sent Plaintiff yet another telemarketing text message. That same day, and for the third time, Plaintiff responded back with Defendant's suggested opt-out language "Stop"—the receipt of which Defendant confirmed for a third time. Thereafter, Defendant sent Plaintiff additional telemarketing text messages on December 18, 2023, January 8, 2024, and January 16, 2024. In total, Defendant sent Plaintiff seven telemarketing text messages after

receiving Plaintiff's initial opt-out request (this figure excludes Defendant's first confirmation text pertaining to Plaintiff's initial opt-out request).[2]

35.    The telemarketing text messages Defendant sent to Plaintiff on January 8, 2024 and January 16, 2024 were each sent more than thirty days after Plaintiff's initial opt-out request on December 5, 2023.

36.    Defendant's messages constitute telemarketing because the purpose of Defendant's text messages was to encourage the purchase of Defendant's products, goods, and/or services. *See In re SoundBite Communications, Inc.*, 27 F.C.C. Rcd. at 15399 ("The Commission requires prior express consent to be obtained in writing for autodialed telemarketing calls made to wireless numbers.") (citing *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 27 FCC Rcd 1830 at 1837, para. 18 (2012)).

37.    As evidenced by Defendant's failure to honor Plaintiff's requests to opt-out of Defendant's text message spam, Defendant's internal do-not-call policy (to the extent that it even exists) violates 47 C.F.R. § 64.1200(d) by, among other things, not recording and honoring do-not-call requests.

38.    Upon information and belief, Defendant maintains and/or has access to outbound transmission reports for all text messages sent promoting its services and

---

[2] *See In re SoundBite Communications, Inc.*, 27 F.C.C. Rcd. at 15394 (consent to receive text messages after sending opt-out request is limited to message confirming opt-out was effective).

goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members.

39. Defendant's failure to honor opt-out requests demonstrates that Defendant does not (1) maintain written policies and procedures regarding its text messaging marketing; (2) provide training to its personnel engaged in telemarketing; and/or (3) maintain a standalone do-not-call list.

40. Defendant's failure to honor opt-out requests constitutes abusive telemarketing.

41. Defendant's failure to (1) maintain the required written policies and procedures, (2) provide training to its personnel engaged in telemarketing, (3) maintain a standalone do-not-call list, and (4) honor consumer opt-out requests caused Plaintiff and the Class members harm as they continued to receive text message spam after asking for those messages to stop.

42. Defendant's telephonic sales calls caused Plaintiff and the Class members harm, including statutory damages, inconvenience, invasion of privacy, aggravation, annoyance, and violation of their statutory privacy rights.

43. Defendant's text message spam caused Plaintiff and the Class members harm, including violations of their statutory rights, trespass, annoyance, nuisance, invasion of their privacy, and intrusion upon seclusion. Defendant's text messages also occupied storage space on Plaintiff's and the Class members' telephones.

///

## FACTUAL ALLEGATIONS RELATED TO
## THE ATDS CLASS

44.     Plaintiff is the account holder of the 0635 Number.

45.     Plaintiff is the regular user of the 0635 Number and uses the 0635 Number as his residential telephone line.

46.     During the time frame relevant to this complaint, Defendant has caused multiple text messages to be transmitted to the 0635 Number.

47.     Defendant did not have Plaintiff's prior express consent to contact him on his cellular phone.

48.     All or some of Defendant's text messages constitute telemarketing because they encourage the purchase of Defendant's goods or services.

49.     In the alternative, all or some of Defendant's text messages are advertising because they containe "material advertising the commercial availability or quality of any property, goods, or services." *An Phan*, 351 F. Supp. 3d at 1261 (quoting 47 C.F.R. § 64.1200(f)(1))

50.     Defendant did not have the Plaintiff's prior written consent to send Plaintiff telemarketing text messages.

51.     Based on the content and format of Defendant's text messages, Plaintiff alleges that they were sent by Defendant *en masse*, using an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227(a)(l) and as prohibited by 47 U.S.C. § 227(b)(1)(A).

52.     The text messages were sent from a telephone number 48687, which is a short code telephone number.

53.     The text messages provide promotional content for Defendant's products or services and were sent with the goal of enticing Plaintiff to utilize or purchase its products or services and to contact Defendant to learn more about them.

54.     The text messages are impersonal in nature, do not use Plaintiff's name, and utilize boilerplate language. Thus, on information and belief, the text messages were sent to recipients *en masse*.

55.     Additionally, based on the use of the short code telephone number, Plaintiff is informed and believes, and upon such information and belief alleges that short code telephone numbers are used by companies such as Defendant to message consumers *en masse*. The use of short codes is indicative of non-human messaging because people do not have cellular phones with short codes.

56.     Annoyed by the unwanted text message, all or some of which were telemarketing or advertising material, Plaintiff on numerous occasions responded to the text messages by texting "Stop." Almost immediately on each such occasion, Defendant responded that it had received Plaintiff's directive and response, and that he would not receive further text messages from Defendant. The immediate response from Defendant containing generic messaging to Plaintiff confirming its receipt of his response and directive that he not be sent any additional text messages by Defendant,

and the fact that the text messages from Defendant thereafter persisted, indicates the use of an ATDS.

57.     Based on the foregoing, no human directed the text messages to Plaintiff's cellular phone; rather, Plaintiff's cellular phone was called using a random or sequential number generator with the capacity to store or produce those numbers. In other words, on information and belief, Defendant sent or transmitted, or had sent or transmitted on its behalf, the text messages to Plaintiff's cellular phone using an automatic telephone dialing system as defined by 47 U.S.C. § 227(b)(1)(A).

58.     On information and belief, Defendant sent text messages (or similar text messages) *en masse* to a list of thousands (or more) of randomly generated cellular telephone numbers using an ATDS.

59.     On information and belief, Defendant sent the text messages to Plaintiff and Class members using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers simultaneously and without human intervention. By sending such texts to Plaintiff and the Class members, Defendant violated 47 U.S.C. § 227(b)(1)(A).

## CLASS ALLEGATIONS

60.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

61.     Plaintiff brings this case on behalf of the following Classes defined as follows:

**Internal Do Not Call Class:** All persons within the United States who, within the four years prior to the filing of this Complaint, (1) received more than one unsolicited text message and/or telemarketing call from Defendant or anyone acting on Defendant's behalf, (2) within any 12-month period, (3) for the purpose of selling Defendant's products and/or services, (4) including at least one text message or telemarketing call after such person requested that Defendant stop calling and/or texting.

**Automatic Telephone Dialing System (ATDS) Class**: All persons within the United States who, within the four years prior to the filing of this Complaint, (1) received any unsolicited text messages, (2) sent using the same or similar ATDS Defendant used to place calls to Plaintiff, (3) which text message and/or call was not made for emergency purposes, and (4) was sent without the recipient's prior express consent.

**Automatic Telephone Dialing System (ATDS) – Telemarketing Sub-Class**: All persons within the United States who, within the four years prior to the filing of this Complaint, (1) received any unsolicited telemarketing or advertising text messages, (2) sent using the same or similar ATDS Defendant used to place calls to Plaintiff, (3) which text message and/or call was not made for emergency purposes, and (4) was sent without the recipient's prior written express consent.

Plaintiff reserves the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery. Defendant and its employees or agents are excluded from the Class.

62. **Numerosity**: Defendant is a leading food and drug retailer in the United States. As of December 2, 2023, the Company operated 2,271 retail food and drug stores with 1,726 pharmacies, 401 associated fuel centers, 22 dedicated distribution centers and 19 manufacturing facilities. Defendant operates stores across 34 states and the District of Columbia with 24 banners including Albertsons, Safeway, Vons, Jewel-

Osco, Shaw's, Acme, Tom Thumb, Randalls, United Supermarkets, Pavilions, Star Market, Haggen, Carrs, Kings Food Markets and Balducci's Food Lovers Market.[3]

63.     In light of Defendant's business size, it is reasonable to conclude that Defendant has placed calls to cellular telephone numbers belonging to thousands of consumers throughout the United States against their express wishes.

64.     The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable. The exact number and identities of the members of the Class are unknown at this time and can only be ascertained through discovery.

65.     **Common Questions of Law and Fact**: There are numerous questions of law and fact common to members of the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the members of the Class are:

a.     Whether Defendant initiated telephonic sales calls to Plaintiff and the Class members;

b.     Whether Defendant sent text messages to Plaintiff and the Class members using an ATDS;

c.     Whether Defendant's text messages constitute telemarketing;

---

[3]          https://www.albertsonscompanies.com/newsroom/press-releases/news-details/2024/Albertsons-Companies-Inc.-Reports-Third-Quarter-Fiscal-2023-Results/default.aspx

d. Whether Defendant's text messages constitute telephone solicitations;

e. Whether Defendant's text messages constitute advertising;

f. Whether Defendant continued to send telemarketing text messages after opt- out requests;

g. Whether Defendant maintains an internal do-not-call list and instructs its employees on how to use the list;

h. Whether Defendant engaged in abusive telemarketing practices;

i. Whether the Defendant's violations of the TCPA were willful or knowing; and

j. Whether Defendant is liable for damages, and the amount of such damages.

The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits calls to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

66. **Typicality**: Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

67. **Protecting the Interests of the Class Members**: Plaintiff understands his duties as a class representative and will fully and adequately assert and protect the interests of the Class. Plaintiff has retained counsel competent in the prosecution of

complex class action litigation. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

68.     A Class Action is Superior and Advisable: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

69.     Furthermore, the prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

///

///

///

**COUNT I**
**VIOLATION OF 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)**
**(On Behalf of Plaintiff and the Internal Do Not Call Class)**

70.     Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1-42 and 59-68 as if fully set forth herein.

71.     In pertinent part, 47 C.F.R. § 64.1200(d) provides:

No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) **Written policy**. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) **Training of personnel engaged in telemarketing**. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) **Recording, disclosure of do-not-call requests**. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must

record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

72.     Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

73.     Plaintiff and the Class members made requests to Defendant not to receive Defendant's telemarketing or solicitations text messages.

74.     Defendant failed to honor Plaintiff's and the Class members' opt-out requests.

75.    Defendant's refusal to honor opt-out requests is indicative of Defendant's failure to implement a written policy for maintaining a do-not-call list and to train its personnel engaged in telemarketing or solicitation on the existence and use of the do-not-call-list. Thus, Defendant has violated 47 C.F.R. § 64.1200(d).

76.    Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation.

77.    In the event Defendant's conduct is found to be knowing or willful, Plaintiff and Class members are entitled to an award of $1,500.00 in statutory damages per violation.

78.    Plaintiff and the Internal Do Not Call Class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to section 227(c)(5).

### COUNT II
### Violation of 47U.S.C. § 227 (c) and 16 C.F.R. § 310.4(b)(iii)(A)

79.    Plaintiff incorporates the allegations contained in paragraphs 1-42 and 59-67 as if fully set forth herein.

80.    The Defendant violated the TCPA by calling, within a 12-month period, persons who asked Defendant to stop placing calls and/or text messages to their telephone number.

///

81. In pertinent part, 16 C.F.R. § 310.4(b)(1)(iii)(A) provides:

(1) It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to engage in, or for a seller to cause a telemarketer to engage in, the following conduct:

(iii) Initiating any outbound telephone call to a person when:

(A) That person previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered or made on behalf of the charitable organization for which a charitable contribution is being solicited; […]

82. The purpose of Defendant's text messages was to offer or promote goods or services for purchase or rental.

83. Defendant practiced abusive telemarketing when it continued to place sales calls to Plaintiff's and the class members' telephone numbers after they told Defendant they did not wish to receive further calls from or on behalf of Defendant.

84. Plaintiff and the Class members made requests to Defendant not to receive text messages from Defendant.

85. Defendant failed to honor Plaintiff's and the Class members' opt-out requests.

86. Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation.

87. In the event Defendant's conduct is found to be knowing or willful, Plaintiff and Class members are entitled to an award of $1,500.00 in statutory damages per violation.

88. Plaintiff and the Internal Do Not Call Class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to section 227(c)(5).

## COUNT III
## VIOLATION OF 47 U.S.C. § 227(b)(1)(A)(iii), 47 C.F.R. § 64.1200(a)(1)(iii), and 47 C.F.R. § 64.1200(d)
### (On Behalf of Plaintiff and the ATDS Class)

89. Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1-21 and 43-68 as if fully set forth herein.

90. In pertinent part, 47 U.S.C. § 227(b) provides:

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States--

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party)

using any automatic telephone dialing system or an artificial or prerecorded voice--

        ***

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States;

91. Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) of the Telephone Consumer Protection Act by making telephone calls to Plaintiff's cellular telephone, which were initiated by an automatic telephone dialing system, and not legally permissible under any provision to the aforementioned statute.

92. Pursuant to section 227(b)(3) of the TCPA, Plaintiff and the ATDS Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation.

93. In the event Defendant's conduct is found to be knowing or willful, Plaintiff and ATDS Class members are entitled to an award of $1,500.00 in statutory damages per violation.

94. Plaintiff and the ATDS Class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to section 227(b)(3).

# COUNT IV
## VIOLATION OF 47 C.F.R. § 64.1200(a)(2) and 47 C.F.R. § 64.1200(d)
### (On Behalf of Plaintiff and the ATDS Telemarketing Sub-Class)

95.     Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1-21 and 43-68 as if fully set forth herein.

96.     In pertinent part, 47 CFR § 64.1200(a)(2) provides:

(a)     No person or entity may:

(2) Initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party or the prior express consent of the called party when the call is made by or on behalf of a tax-exempt nonprofit organization, or a call that delivers a "health care" message made by, or on behalf of, a "covered entity" or its "business associate," as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103.

97.     Defendant violated 447 CFR § 64.1200(a)(2) by placing telemarking calls to Plaintiff's cellular telephone, which were initiated by an automatic telephone dialing system without the prior express written consent of the recipients, and not legally permissible under any provision to the aforementioned statute.

98. Pursuant to section 227(b)(3) of the TCPA, Plaintiff and the ATDS Telemarketing Sub-Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation.

99. In the event Defendant's conduct is found to be knowing or willful, Plaintiff and ATDS Telemarketing Sub-Class members are entitled to an award of $1,500.00 in statutory damages per violation.

**100.** Plaintiff and the ATDS Telemarketing Sub-Class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to section 227(b)(3).

## JURY DEMAND

101. Plaintiff hereby demands a trial by jury.

## DOCUMENT PRESERVATION DEMAND

102. Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with Defendant and the calls as alleged herein.

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully requests this Court grant the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

b) An award of statutory damages for Plaintiff and each member of the respective Classes as applicable under the TCPA;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to comply with 47 C.F.R. § 64.1200(d) by

    1) maintaining the required written policies;

    2) providing training to their personnel engaged in telemarketing;

    3) maintaining a do-not-call list;

    4) and such further and other relief as the Court deems necessary.

e) An injunction requiring Defendant to cease sending text messages via an automated telephone dialing system, to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes.

February 8, 2024

Respectfully submitted,

/s/ John R. Habashy
John R. Habashy (SBN 236708)
*john@lexiconlaw.com*
**LEXICON LAW, PC**
633 West 5th Street, 28th Floor
Los Angeles, CA 90071
Tel: (213) 223-5900
Fax: (888) 373-2107

///
///

Scott D. Owens (FL 0597651)
*(Pro Hac Vice to Be Submitted)*
scott@scottdowens.com
**SCOTT D. OWENS, P.A.**
3800 South Ocean Drive, Suite 235
Hollywood, Florida 33019
Tel: (954) 589-0588
Fax: (954) 337-0666

Attorney for Plaintiff
and the putative class